IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
(BLUEFIELD DIVISION)

**GRANT E. GAZVODA,**

    **Plaintiff,**

    **v.**

**GARRISON PROPERTY AND
CASUALTY INSURANCE COMPANY,
USAA CASUALTY INSURANCE COMPANY,
THOMAS MALATINO, WILLIAM SCANLON,
and DAVID BROOKS,**

    **Defendants.**

                                      **Civil Action No. 1:23-CV-00523**
                                      **Honorable Frank W. Volk**

## AMENDED COMPLAINT

COMES NOW Plaintiff Grant E. Gazvoda ("Plaintiff"), by counsel, who for his Amended Complaint against the Defendants states as follows:

### COMMON ALLEGATIONS

1. Plaintiff is, and was at the time of the events giving rise to this Amended Complaint, a resident of Mercer County, West Virginia, and is the owner of real and personal property located at 401 4th St. Bluefield, Mercer County, West Virginia 24701 (the "Property").

2. Defendant USAA Casualty Insurance Company ("USAA") is a foreign corporation, with its principal place of business in San Antonio, Texas, licensed to do business and actively doing business in West Virginia, including in Mercer County, West Virginia.

3. Defendant Garrison Property and Casualty Insurance Company ("Garrison") is a foreign corporation, with its principal place of business in San Antonio, Texas, licensed to do



EXHIBIT A

business and actively doing business in West Virginia, including Mercer County, West Virginia. Defendants Garrison and USAA shall be known together as the "USAA Defendants."

4. Upon information and belief, Defendant Thomas Malatino ("Malatino") is, and all times relevant hereto has been, an employee of Defendant USAA, and resides outside of the State of West Virginia, but is licensed as an insurance adjustor in West Virginia and engages in the business of insurance in West Virginia, including in Mercer County, West Virginia.

5. Defendant William Scanlon ("William") is, and all times relevant hereto has been, an employee of Defendant USAA and/or Defendant Garrison, who upon information and belief resides outside of the State of West Virginia, but is licensed as an insurance adjustor in West Virginia and engages in the business of insurance in West Virginia, including in Mercer County, West Virginia.

6. Defendant David Brooks ("Brooks") is, and all times relevant hereto has been, an employee of Defendant USAA and/or Defendant Garrison, who upon information and belief resides outside of the State of West Virginia and engages in the business of insurance in West Virginia, including in Mercer County, West Virginia.

7. Upon information and belief, Defendant USAA provides personnel and direction for Defendant Garrison's investigation, handling and settlement of claims and requires use of Defendant USAA's claim guidelines.

8. Upon information and belief, Defendants Garrison, Brooks, William, and Malatino are required to use Defendant USAA's personnel and claim guidelines in connection with investigation, handling and settlement of claims under Garrison policies and did, in fact, use USAA's personnel and claim guidelines in connection with investigation and handling of the claims submitted by Plaintiff.

9. Inasmuch as Defendants Brooks, William, and Malatino were, upon information and belief, employees and agents of the USAA Defendants at all relevant times, the USAA Defendants are chargeable with Defendant Brooks, William, and Malatino's conduct under the legal and equitable doctrines of vicarious liability, specifically including, but not limited to the doctrines of employer/employee, master/servant, principle/agent, non-delegable duty, respondeat superior, and/or insurance regulatory law.

10. Jurisdiction and venue are proper before the United States District Court for the Southern District of West Virginia, inasmuch as the USAA Defendants do business in Mercer County, West Virginia.

11. At all relevant times, each of the Defendants was engaged in the business of insurance in the State of West Virginia, as defined by Chapter 33 of the West Virginia Code, and are subject to the laws, Rules and Regulations of West Virginia related to insurance.

## FACTS

12. On October 29, 2022, Plaintiff's residence at 401 4th St. Bluefield, Mercer County, West Virginia, 24701 ("the Insured Property") was insured under an insurance policy issued by the USAA Defendants, identified as Policy No. GAR 03450 70 58 90A (hereinafter the "Policy").

13. Upon information and belief, prior to October 29, 2022, a representative of the USAA Defendants determined and established the insurance limits for Plaintiff's home and personal property under the Policy.

14. On October 29, 2022, during the term of the Policy, a fire ("the Fire Loss") occurred at the Insured Property.

15. As a direct and proximate result of the Fire Loss, the Insured Property sustained severe damage, resulting in the destruction of the Plaintiff's dwelling and his personal property.

16. At the time of the Fire Loss, the Policy provided Coverage A – Dwelling, with limits in the amount of $265,000; Coverage B – Other Structures, with limits in the amount of $26,500; Coverage C – Personal Property, with limits in the amount of $132,500; Coverage D – Loss of Use, with "UNLIMITED" limits over a term of twelve (12) months; and Debris Removal coverage up to five percent (5%) of Coverage A, or $13,250.

17. Each of the aforementioned limits were determined and set by the USAA Defendants and formed the basis of the premium charged to the Plaintiff.

18. Plaintiff paid all premiums for the Policy as due to the USAA Defendants and complied will all of the other terms, conditions and requirements of the Policy.

19. For days prior to the fire loss, and at the time of the fire loss, Plaintiff was away from his home, staying with his wife (girlfriend at the time) and another couple in Virginia.

20. On October 29, 2022, Plaintiff learned of the Fire Loss when he received a message from a neighbor, Angela Coleman.

21. Upon learning of the Fire Loss, Plaintiff called a friend who picked him up in Virginia and drove him to the Insured Property.

22. Under the terms of the Policy and the laws of West Virginia, the USAA Defendants were obligated to pay benefits under Coverage A – Dwelling, Coverage B – Other Structures, Coverage D – Loss of Use, and Debris Removal coverage as a result of the Fire Loss at the Insured Property.

23. Under the terms of the Policy and the laws of West Virginia, the USAA Defendants were obligated to pay benefits under Coverage C – Personal Property for Plaintiff's loss of personal property caused by the October 29, 2022 fire loss.

24. Following the Fire Loss, Plaintiff submitted a timely claim to the USAA Defendants for insurance benefits due and payable under the Policy.

25. Upon information and belief, the USAA Defendants assigned Plaintiff's claims arising from the Fire Loss to Defendant William and Defendant Malatino for investigation and handling.

26. Upon information and belief, at an unknown time Plaintiff's claim was also transferred and/or assigned to Defendant David Brooks a member of the USAA Defendants' Special Investigation Unit for investigation and handling.

27. Defendant William inspected Plaintiff's home on or about November 7, 2022, and determined that the home was uninhabitable.

28. As a result, Defendants Garrison and/or USAA began providing Plaintiff with living expense coverage as set forth in the Policy.

29. On November 15, 2022, Defendant Malatino requested that Plaintiff sign an Authorization for Release of Information to allow the USAA Defendants to collect information from multiple entities, including "(a) any banks . . . (b) any insurance company . . . (e) telecommunications provider . . . (g) public utility; (h) law enforcement".

30. Plaintiff executed the Release of Information and returned it to the USAA Defendants, allowing them to access the information necessary to investigate Plaintiff's Fire Loss claim.

31. Following the fire, Plaintiff lost access to his cell phone as it was tied to his internet account for his home destroyed in the Fire Loss.

32. On December 23, 2022, Plaintiff provided the USAA Defendants with a temporary mailing address to contact him and a new phone number.

33. On December 30, 2022, Defendant Malatino requested that Plaintiff provide additional information in connection with the Fire Loss, including an ADT invoice, cell phone records, and contact information for the individuals Plaintiff was with prior to the Fire Loss.

34. In January of 2023, Plaintiff provided the requested information to the Defendants, including the contact information for Josh Tiller and Angela Coleman, except for his cell phone records, which he did not have, so he advised the USAA Defendants to get the cell phone records using the Release of Information which he had provided to Defendants.

35. Also in January of 2023, Plaintiff learned that the City of Bluefield intended to tear down his home because it had not been repaired following the Fire Loss.

36. Plaintiff reported this information to the USAA Defendants and requested that they notify the City of Bluefield about the pendency of the USAA Defendants' investigation to protect both the investigation and Plaintiff's property.

37. Unfortunately, despite Plaintiff's efforts to stop the destruction of his property, the City of Bluefield tore down Plaintiff's home on January 26, 2023.

38. The destruction of the Plaintiff's home by the City of Bluefield was reported by Plaintiff to the USAA Defendants.

39. After reporting the Fire Loss to the USAA Defendants and prior to the home being torn down, Plaintiff was told not to board up his home as the USAA Defendants wished to send a fire investigator to inspect the property. The door to Plaintiff's home and several windows were smashed, leaving Plaintiff's home unsecured.

40. Upon information and belief, while Plaintiff's home was unsecured following the Fire Loss, multiple items of personal property were stolen from the home.

41. Plaintiff reported the thefts to the USAA Defendants.

42. On January 12, 2023, Defendant Malatino indicated that the stolen property would not be covered in connection with the Fire Loss and that Plaintiff must "file" a separate theft claim.

43. Defendant Malatino failed to provide information to Plaintiff regarding how to "file" a separate theft claim but indicated that a claim would only be considered if a police report was made for the theft.

44. On March 8, 2023, Plaintiff made a demand for the Coverage A limits under the Policy and provided the USAA Defendants with a list of his personal property destroyed by the Fire Loss and/or stolen following the Fire Loss.

45. As of the time of the filing of Plaintiff's initial Complaint, the USAA Defendants had not paid the benefits due the Plaintiff under the Policy in connection with the Fire Loss.

46. During Plaintiff's early conversations with the USAA Defendants and Defendants William and Malatino, Plaintiff reported that he was in Virginia at the time of the Fire Loss.

47. Despite having the information regarding Plaintiff's whereabouts at the time of the Fire Loss, the Defendants failed to timely investigate the information.

48. Instead, in April of 2023, the USAA Defendants requested the examination under oath of Mr. Gazvoda, which occurred on April 26, 2023.

49. On May 8, 2023, counsel for Plaintiff provided the USAA Defendants with phone numbers for Lawrence Callify, Ricky Reed, Angela Coleman, and others, a receipt for Plaintiff's bed which was destroyed in the Fire Loss, photos and values for multiple items destroyed and/or lost as a result of the Fire Loss, and an affidavit from Plaintiff's father regarding items inherited by Plaintiff.

50. Plaintiff attempted to cooperate with the Defendants and to respond to each of Defendants' multiple requests for information.

51. On June 6, 2023, the USAA Defendants indicated that their counsel had spoken with multiple witnesses regarding Plaintiff's whereabouts on the night of the fire, but then later requested that Plaintiff set up in-person meetings with witnesses.

52. Despite having no obligation to do so, Plaintiff attempted to assist, to the extent possible, in making witnesses available to Defendants.

53. On July 5, 2023, the USAA Defendants indicated that their counsel had spoken with Josh Tiller, who confirmed that he picked up Plaintiff in Virginia the night of the Fire Loss.

54. On July 25, 2023, the USAA Defendants stated that they needed additional information from Plaintiff despite the fact that the USAA Defendants received a Release of Information from Plaintiff in January.

55. On August 4, 2023, Plaintiff filed his initial Complaint against the Defendants as a result of their breach of contract, bad faith, and violations of the West Virginia Unfair Trade Practices Act.

56. Following its receipt of Plaintiff's Complaint, Defendant Brooks called counsel for Plaintiff on September 21, 2023, and indicated that Defendant Garrison would not be making any payment to Plaintiff under the Policy and was denying Plaintiff's claims arising from the fire loss.

57. Defendant Brooks indicated that he was the case manager in charge of the investigation into Plaintiff's claim, that he had directed the investigation, and that he had himself conducted portions of the investigation into Plaintiff's claims.

58. Further, Defendant Brooks stated that he had made and/or directed that the coverage denial for Plaintiff's claims be made.

59. On September 21, 2023, approximately eleven (11) months after the subject fire loss, Defendant Brooks provided a denial letter to Plaintiff's counsel on behalf of the USAA

Defendants, claiming that the loss did not meet the Policy's definition of "sudden and accidental," that there was evidence Plaintiff "committed or conspired to commit" the actions which led to the loss, and that Plaintiff failed to cooperate with the investigation as required by the Policy.

60. As of the date of this Amended Complaint, the USAA Defendants have failed and refused to pay Plaintiff the benefits due to him under the Policy despite the uncontroverted fact that Plaintiff's home, other structures and personal property were destroyed by the Fire Loss.

61. The USAA Defendants have not sent any communications disputing that Plaintiff's personal property was destroyed as a result of the Fire Loss.

62. Plaintiff is owed under the Policy and West Virginia law the stated limits of Coverage A – Dwelling due to the Fire Loss inasmuch as Plaintiff has suffered a total loss of his home.

63. Plaintiff is owed under the Policy and West Virginia law payment for Coverage C – Personal Property, due to the loss of his personal property due to the Fire Loss.

64. Plaintiff is owed under the Policy and West Virginia law the benefits due him under Coverage D – Loss of Use due to the Fire Loss.

65. The Defendants have refused and failed to timely adjust, handle, and pay Plaintiff's Fire Loss claims, and have failed to complete timely payment of the benefits owed under the Policy, which has caused Plaintiff significant injuries and damages.

### Count I - Breach of Contract (USAA AND GARRISON)

66. Plaintiff hereby restates and re-alleges, as though fully incorporated into Count I, each and every allegation contained in Paragraphs 1 through 65 of this Amended Complaint.

67. Pursuant to the terms of the Policy, the USAA Defendants are and have been obligated to pay benefits to Plaintiff for the loss of his dwelling, other structures, personal property, debris removal expenses and loss of use damages.

68. The USAA Defendants' denial of Plaintiff's claims made as a result of his October 29, 2022 fire loss constitutes a breach of the terms of the Policy and the USAA Defendants contractual duties to Plaintiff.

69. The USAA Defendants' failure and refusal to timely pay for the full amount of covered damages Plaintiff sustained as a result of the Fire Loss constitutes a breach of the terms of the Policy and the USAA Defendants contractual duties to Plaintiff.

70. Despite having accepted the Plaintiff's premium payments, the USAA Defendants have denied and refused timely payment of the full coverage benefits due and owing under the Policy to Plaintiff.

71. As a result of the USAA Defendant's breach of their duties under the Policy, Plaintiff has sustained damages, including the loss of the insurance proceeds to which he is entitled; the full cost of replacing his damaged property; economic loss and lost interest; the attorney's fees and litigation expenses associated with pursuing this civil action; and the other economic and non-economic damages arising from Defendants' conduct.

### Count II - Common-Law "Bad Faith" (USAA and GARRISON)

72. Plaintiff hereby restates and re-alleges, as though fully incorporated into Count II, each and every allegation contained in Paragraphs 1 through 71 of this Amended Complaint.

73. Through the USAA Defendants' actions described herein and Defendants' refusal to pay Plaintiff for his damages arising from the Fire Loss, owed under the Policy, the USAA

Defendants have breached their common-law duty of good faith and fair dealing to Plaintiff, such that their conduct amounts to "common-law bad faith."

74. In particular, through their actions and their delay in paying Plaintiff, the USAA Defendants have breached their duty of good faith in the following particulars:

    a) By failing to conduct an adequate, timely and thorough investigation to determine the policy benefits due and owing to Plaintiff in connection with the damage to the Plaintiff's dwelling, other structures, and personal property, and Plaintiff's damages for debris removal and loss of use;

    b) By misrepresenting the terms of the Policy and the benefits afforded by the Policy in an attempt to settle the Plaintiff's claim for less than Defendants knew the claim was worth;

    c) By misrepresenting the facts of the investigation to Plaintiff in an attempt to coerce him into withdrawing his claims;

    d) By refusing to pay applicable policy benefits without a factual or legal basis; and

    e) By favoring their own interests over the interests of their insured.

75. As a direct and proximate result of the USAA Defendants' "bad faith" and their breach of the USAA Defendants' common law duty of good faith and fair dealing, Plaintiff is entitled to recover from the USAA Defendants his economic and non-economic damages outlined herein, including the attorney's fees and costs Plaintiff has incurred and will incur as a result of the USAA Defendants' conduct.

76. The USAA Defendants conduct, as described above, was intentional and malicious, intended to benefit the USAA Defendants while causing damage to the Plaintiff and, therefore, Plaintiff is entitled to an award of punitive damages against the USAA Defendants.

### Count III - Unfair Trade Practices (All Defendants)

77. Plaintiff hereby restates and re-alleges, as though fully incorporated into Count III, each and every allegation contained in Paragraphs 1 through 76 of this Amended Complaint.

78. The Defendants had adequate notice of Plaintiff's claims and had adequate time to investigate any insurance coverage issues and were not in any way prejudiced by the timeliness or lack of timeliness of notification of Plaintiff's claims.

79. At all times relevant herein, Defendants delayed payment of Plaintiff's claims, the USAA Defendants failed to implement reasonable standards, and the Defendants failed to conduct a prompt and reasonable investigation based on all available information, thereby violating applicable consumer protection statutes and regulations.

80. The Defendants failed to timely use the Release of Information and contact information provided by Plaintiff to confirm his location on the night of the Fire Loss within a reasonable time after receiving the Release of Information and contact information.

81. Defendants' investigation was unreasonable as Defendants continued to request ever-increasing amounts of information and materials from Plaintiff regarding his whereabouts on this night of the fire, despite the fact that Defendants had the ability to obtain the requested information through the Release of Information provided by Plaintiff in January of 2023.

82. Defendants' investigation was unreasonable in that Defendants had the reasonable opportunity to speak with multiple witnesses to confirm Plaintiff's location at the time of the Fire Loss but continued to delay the payment of Plaintiff's claims arising from the Fire Loss in an apparent never-ending search for some perceived thread of evidence that might support a continued delay or denial of payment of the coverage benefits due under the Policy.

83. For example, Defendants' investigation was unreasonable in that Defendants sought to subpoena individuals for additional statements and materials despite having already communicated with such individuals.

84. Defendants' investigation was also unreasonable in that Defendants failed to use the information provided to Defendants in Plaintiff's examination under oath, property loss statement, and letters to make determinations regarding Plaintiff's personal property claim arising from the Fire Loss.

85. At all times relevant herein, the USAA Defendants failed to adopt and/or implement reasonable standards for the prompt investigation of the claims of Plaintiff and this constitutes a direct violation of applicable consumer protection statutes and regulations.

86. At all times relevant herein, Defendants refused to acknowledge and act reasonably promptly upon communications with respect to Plaintiff's claims, thereby violating applicable consumer protection statutes and regulations, as set forth in the allegations of this Amended Complaint.

87. In particular, Defendants failed to properly respond to Plaintiff's communications requesting payment under the policy and failed to timely communicate a coverage position supported by the Policy as to why payments had not been made under the Policy.

88. Further, Defendants failed to communicate a denial of Plaintiff's claim until September 21, 2023, when Defendant Brooks sent a denial letter on behalf of the USAA Defendants.

89. At all times relevant herein, Defendants failed to affirm or deny coverage of claims within a reasonable time period after proof of loss was completed, thereby violating applicable consumer protection statutes and regulations, including W. Va. Code § 33-11-4(9)(e), as set forth in the allegations of this Amended Complaint.

90. In particular, Defendants failed to properly pay benefits owed or deny coverages for Plaintiff's real and personal property claims despite the fact that the loss occurred in October

of 2022, Plaintiff submitted his personal property inventory in March of 2023, and his EUO was conducted in April of 2023.

91. Further, Defendants have implied that at least a portion of Plaintiff's personal property claim is agreed upon, but they have failed and refused to pay any of Plaintiff's personal property claim.

92. At all times relevant herein, Defendants refused to effectuate a prompt, fair and equitable settlement of Plaintiff's claims, despite the fact that the USAA Defendants' liability was reasonably clear, thereby violating applicable consumer protection statutes and regulations, including W. Va. Code §33-11-4(9)(f) as set forth in the allegations of this Amended Complaint.

93. Defendants have refused to pay even a portion of Plaintiff's dwelling coverage, even though Plaintiff's home burned and was then torn down as a result of the Fire Loss.

94. Defendants have refused to pay even a portion of Plaintiff's personal property coverage despite knowing that Plaintiff's home was destroyed and that all of Plaintiff's belongings were damaged or destroyed in the Fire Loss.

95. Defendants failed to pay amounts owed for Plaintiff's real and personal property for months in an attempt to force Plaintiff to settle all of his claims for less than the claims are worth.

96. Defendants have repeatedly failed to provide timely payment for Plaintiff's loss of use and debris removal coverage despite knowing that such coverages are provided by the Policy.

97. At all times relevant herein, Defendants misrepresented pertinent facts concerning Plaintiff's insurance claims and coverage, thereby violating applicable consumer protection statutes and regulations, including W. Va. Code § 33-11-4(9)(a).

98. For example, Defendants consistently communicated that they could not contact certain witnesses, including Noah Horn, and needed Plaintiff to facilitate such communication as a means to delay the investigation and pressure Plaintiff to resolve his claim, when in fact Defendants had a release and ample ability to contact Noah Horn, as evidenced by the September 21, 2023 denial letter from Defendant Brooks.

99. Further, Defendants misrepresented the status of coverage under the Plaintiff's Policy and the amounts owed for Plaintiff's covered Fire Loss.

100. Through Defendants' delay and refusal to pay Plaintiff's valid claims and Defendants' failure to promptly and properly investigate Plaintiff's claims, Defendants compelled Plaintiff to retain counsel and to file his Complaint and Amended Complaint in order to recover the amounts due under the Policy, thereby violating applicable consumer protection statutes and regulations, including W. Va. Code §33-11-4(9)(g).

101. Defendants' conduct, as described hereinabove, is part of Defendants' general business practice and constitutes unfair claims settlement practices under applicable consumer protection statutes and regulations.

102. In particular, Defendants' violations of the above-referenced statutory and regulatory provisions demonstrate a pattern and practice of violating the Act by Defendants, as opposed to an isolated incident.

103. As a direct and proximate result of Defendants' violations of applicable consumer protection statutes, Plaintiff has suffered annoyance, inconvenience, aggravation and emotional distress, and has been forced to incur the attorney's fees and costs associated with pursuing his claims and instituting the present action in order to recover the insurance proceeds owed to him under the Policy in connection with the Fire Loss.

104. This Court has jurisdiction over this action against Defendants for their violations of West Virginia's consumer protection statutes and regulations, and Plaintiff is entitled to an award of damages for his legal fees and costs, net economic losses and other damages pursuant to this cause of action.

105. From their initial notification of Plaintiff's claims, Defendants acted willfully, intentionally, and maliciously, predetermined to delay and deny payment of the applicable benefits due and owing to Plaintiff.

106. At all times relevant herein, Defendants acted with the deliberate and malicious intent to injure and harm Plaintiff, in violation of the USAA Defendants' duties under the Policy and Defendants' duties under the Unfair Trade Practices Act and West Virginia's insurance regulations, all of which has proximately caused continuing economic and non-economic damages to Plaintiff and all of which warrants and commands an award of punitive damages against Defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, as follows:

a) An award of compensatory damages in an amount in excess of this Court's jurisdictional limits, as proven by the evidence at trial, in connection with the damages, attorney fees and expenses, and net economic losses of Plaintiff, sustained as a result of the actions of the USAA Defendants' breach of the Plaintiff's insurance contract;

b) An award of compensatory damages in an amount in excess of this Court's jurisdictional limits, as proven by the evidence at trial, in connection with the damages, attorney fees and expenses, and net economic losses of Plaintiff, sustained as a result of the USAA Defendants' common law bad faith and breach of their duty of good faith and fair dealing;

c) An award of compensatory damages in an amount in excess of this Court's jurisdictional limits, as proven by the evidence at trial, in connection with the damages, attorney fees and expenses, and net economic losses of Plaintiff, sustained as a result of Defendants' violation of the Unfair Trade Practices Act as a business practice;

d) An award of pre-judgment and post-judgment interest, costs and attorney fees; and

e) An award of punitive damages against Defendants, in an amount to be determined by the Jury, sufficient to deter Defendants and others from similar conduct in the future.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

GREG GAZVODA

**By counsel,**

/s/ *Robert V. Berthold, Jr.*
Robert V. Berthold, Jr. (WVSB #326)
Robert V. Berthold, III (WVSB #11065)
**Berthold Law Firm, PLLC**
208 Capitol Street
P.O. Box 3508
Charleston, WV  25335
*Phone:* (304) 345-5700
*Fax:* (304) 345-5703

and

/s/ *Brent K. Kesner*
Brent K. Kesner (WVSB #2022)
Ernest G. Hentschel, II (WVSB #6066)
Anthony E. Nortz (WVSB #12944)
**Kesner & Kesner, PLLC**
112 Capitol Street (25301)
P. O. Box 2587
Charleston, WV  25329
*Phone:* (304) 345-5200
*Fax:* (304) 345-5265